IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **DEXTER SCALES,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action Number |
| ) | **1:09-cv-0818-JEO** |
| **HONDA MANUFACTURING OF** ) | |
| **ALABAMA, LLC.,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Dexter Scales ("plaintiff") filed this action against Honda Manufacturing of Alabama, LLC, ("defendant"), on April 27, 2009, alleging race discrimination in violation of 42 U.S.C. § 1981. For the reasons set forth below, defendant's Motion for Summary Judgment (doc. 24), is due to be granted, and its Motion to Strike (doc. 31), is due to be granted in part and denied in part.

### I. FACTS AND PROCEDURAL BACKGROUND[1]

Plaintiff, who is African-American, worked as a Process Associate at defendant's vehicle-assembly plant in Lincoln, Alabama, from August 16, 2004, until his termination on April 26, 2005. (Doc. 26-6, Exit Worksheet, at 40).[2] At all relevant times, plaintiff worked an evening shift at the plaint installing heating and cooling units, seat belts, and LED lights into vehicles. (Doc. 26-4, Plaintiff Dep. at 152:1-153:9). Plaintiff also operated a lawn-care service for which he occasionally cut grass before reporting to the plant. (Doc. 26-4, Plaintiff Dep. at 65:20-66:18,

---

[1]The facts are presented in the light most favorable to the plaintiff.

[2]References herein to "Doc. __" are to the electronic numbers assigned by the Clerk of the Court. References to page numbers are also to the electronic page numbers found at the top of the document. References to the depositions are to the page numbers and lines on the original document, not the electronic numbers.

164:19-167:9).

Shortly after plaintiff started his shift on April 22, 2005, another employee reported to Team Manager Debbie McElroy that plaintiff was stumbling, slurring his words, getting behind on his tasks, and smelled of alcohol. (Doc. 26-9, McElroy Aff., at 3 ¶ 10). McElroy asked Freddie Thomas, an Associate Administrator of Associate Relations, to accompany her to speak with plaintiff. (Doc. 26-9, McElroy Aff., at 4 ¶ 11, Doc. 26-10, Thomas Aff, at 5 ¶ 12). Plaintiff told McElroy and Thomas that "there wasn't no way [alcohol] could be in [his] system . . . because . . . [he] cut grass that morning, and . . . ain't drank but half of two beers." (Doc. 26-1, Plaintiff Dep., at 163:17-21). At Thomas's request, plaintiff consented to a blood-alcohol test at Concentra Medical Center, defendant's onsite third-party medical clinic. (Doc. 26-9, McElroy Aff., at 5 ¶ 15). After nurses at Concentra administered the test and treated a cut on plaintiff's finger, Thomas told plaintiff to "come back in a couple of days to get your results for the ... Breathalyzer." (Doc. 26-1, Plaintiff Dep., at 213:21-214:2). Plaintiff understood that he was suspended until completion of the investigation.[3] (Doc. 26-1, Plaintiff Dep., at 221:1, 224:3-5). Indeed, defendant's Drug and Alcohol Free Workplace policy provides that "[a]ssociates may be suspended with or without pay pending resolution of [drug or alcohol] testing and/or appropriate follow-up determination," and that "[w]ithin five (5) days of receiving a confirmed positive test result, [defendant] will notify the associate in writing of the result, the consequences of the result, and the options available to the associate, if any." (Doc. 26-4, Associate Handbook, at 8).

---

[3]McElroy and Thomas testified that the nurses at Concentra told them that plaintiff tested positive for alcohol, however, plaintiff testified that no one told him the test results on April 22, 2005. (Doc. 29-9, McElroy Aff., at 5 ¶ 16, Doc. 26-10, Thomas Aff., at 7 ¶ 16).

Before receiving follow-up from defendant, plaintiff independently contacted Peggy Anderson, who he characterizes as an "assistant with the guys up there at [defendant]," and told her about the blood-alcohol test.[4]  (Doc. 26-2, Plaintiff's Dep., at 257:18-258:14).  Anderson told plaintiff to contact June Goodwin, a counselor with Employment Assistance Services ("EAS"), a third-party entity through which defendant provides associates counseling and rehabilitation for a variety of issues, including substance abuse.  (Doc. 26-2, Plaintiff's Dep., at 258:14-16; Doc. 26-8, Bailey Aff., at 4-5).  Plaintiff voluntarily enrolled in an EAS assistance program after Goodwin told him that "she had counseled associates [who] went on back to work," and that, after counseling, he would be on his "way to getting back [his] job."  (Doc. 26-2, Plaintiff's Dep., at 266:1-3, 273:1-3, 274:19-22, 302:20-23).  Plaintiff acknowledges that he had not been terminated when he spoke with Goodwin and that Goodwin did not clarify whether she was speaking of active, suspended, or terminated employees.  (Doc. 26-2, Plaintiff's Dep., at 266-67).

Thomas's duties included recommending appropriate disciple for violation of defendant's policies, and he recommended that defendant terminate plaintiff's employment because "strict compliance with [defendant's drug and alcohol policy] is a condition of continued employment at [defendant]."  (Doc. 26-10, Thomas Aff., at 1 ¶ 2, 8 ¶ 19).  Plaintiff's initial and confirmation blood-alcohol readings were positive for alcohol at .208 and .197, respectively.  (Doc. 26-4, Test Results, at 24).  Additionally, the nurse who treated plaintiff's finger, Brandi Thompson, reported that his breath smelled of alcohol and that he slurred his words, (doc. 26-4, Thompson's Report, at 22), and the nurse who administered the blood-alcohol test, Debbie Estes, reported that

---

[4]The record is unclear as to Peggy Anderson's employer and job description.  Plaintiff testified that he was unsure whether Anderson was a member of defendant's Human Resources department.  (Doc. 26-2, Plaintiff's Dep., at 280:8-10).

3

plaintiff first said that he had a couple of beers earlier that day, then told her that he had four beers, and by the end of the test that he had eight beers before coming to work, (doc. 26-9, McElroy Aff., at 5 ¶ 16, doc. 26-10, Thomas Aff., at 7 ¶ 16).  Plaintiff disputes that he told Estes that he had more than two beers that day and notes that McElroy and Thomas testified that they did not smell alcohol on his breath.  (Doc. 26-2, Plaintiff's Dep. at 401:2:14, Doc. 26-6, McElroy Dep., at 35:2-15, Doc. 26-7, Thomas Dep., at 68:2-17).  Linda Bailey, the Department Manager of Human Resources, accepted Thomas's recommendation and also concluded that termination was appropriate.  (Doc. 26-10, Thomas Aff., at 8 ¶ 19; Doc. 26-8, Bailey Aff., at 1 ¶ 2, Doc. 26-1, Plaintiff's Dep. at 233).

On April 26, 2005, plaintiff met Thomas at the plant and learned that defendant terminated him for reporting to work under the influence of alcohol in violation of the drug and alcohol policy.  (Doc. 26-1, Plaintiff's Dep., at 232:11-22).  Thomas formally communicated the decision in a letter to plaintiff, stating that he was terminated effective April 26, 2005, in accordance with defendant's policy that "[a]ny associate who receives a positive confirmed test result will be subject to corrective action up to and including termination."  (Doc. 26-7, Termination Letter, at 33).  The letter further informed plaintiff that the drug and alcohol policy states: "Any associate many contest or explain the result to [defendant] within five (5) working days after receiving written notification of the positive test result.  All such explanations should be directed to the Department Manager of Human Resources."  (*Id*.).

Plaintiff testified that after he learned of his termination, Tonette Walker, a Concentra nurse, told him that the breathalyser had not been properly calibrated.  (Doc. 26-1, Plaintiff's Dep., at 251:4-6, 362-63).  Plaintiff acknowledged that Walker did not administer the

4

breathalyser test on him, that he did not know why Walker believed that the machine was improperly calibrated, and that he had no evidence that defendant knew that Walker believed the machine was not properly calibrated. (Doc. 26-2, Plaintiff's Dep., at 338-41). Bailey also testified that she could not recall any reports that the breathalyser was not working properly. (Doc. 26-5, Bailey Dep., 52-53).

On May 1, 2005, plaintiff wrote Bailey requesting "employment assistance services because [of] a problem with alcohol" and an appointment with the defendant's human resources department "to explain [his] position on the matter." (Doc. 26-4, May 1, 2005, Letter, at 38). After not receiving a reply, plaintiff wrote Bailey again on May 11, 2005, to ask for reinstatement. (Doc. 26-4, May 11, 2005, Letter, at 40). In support, he wrote that "many current employees" told him that "[defendant] treated [his] situation differently and gave others with alcohol and drug problems a second chance." (*Id.*). Plaintiff also called Bailey on May 11, 2005, to tell her that the test results were incorrect and that defendant had treated other employees differently. (Doc. 26-1, Plaintiff's Dep. at 233:22-234:4). Bailey told plaintiff "to give her a couple of days to think about [the termination]." (*Id.*). On May 19, 2005, Bailey sent plaintiff a letter stating that she had reviewed the facts that resulted in his termination and concluded that "it is clear that [defendant's] policy was followed thoroughly in [his] case." (Doc. 26-5, May 19, 2005, Letter, at 44).

Plaintiff testified that neither Thomas nor Bailey told him that he was terminated because of his race, but that his fellow employees and employees of third-party entities told him that "[defendant] had white guys that had got caught up on a for sure thing about the alcohol situation and was acknowledged to go to counseling and school and that they could keep their job." (Doc.

5

26-1, Plaintiff's Dep., at 241:7-14, 243:4-8).  When asked by defendant's counsel whether he had supporting evidence for this contention, plaintiff testified that Estes and Walker, nurses at Concentra, told him that white associates who reported to work under the influence of alcohol were not terminated, but that they did not feel comfortable giving plaintiff any names of such individuals.  (Doc. 26-1, Plaintiff's Dep., at 248-49, 252).  Plaintiff also testified that Goodwin, told him that "normally [defendant] lets [associates with alcohol issues] go through school and come back and get their jobs."  (Doc. 26-2, Plaintiff's Dep., at 254:16-23).  However, Goodwin did not provide plaintiff with any names of such individuals.  (*Id.*)  Plaintiff also testified that Leon Simmons, a security officer at the plant, Demon Flanagan and Haywood Bibbs, fellow process associates, and Nanette Singleton, an employee of defendant in the receiving and shipping department, told him that white associates tested positive for alcohol while on the job and were not terminated.  (Doc. 26-2, Plaintiff's Dep., 289-90, 292:9-12, 308:12-15, 326:13-17). Plaintiff testified that these employees were "scared" to provide him with names because "they're afraid they're going to lose their job." (Doc. 26-2, Plaintiff's Dep. at 309:9-13).  Plaintiff acknowledged that he is unaware of whether these individuals had access to other employees' personnel files.  (Doc. 26-2, Plaintiff's Dep., at 291:3-4, 293:1-8, 309:4-23, 326:13-327:2).

      To rebut plaintiff's contentions, Thomas testified that race played no role in his decision to recommend termination and that defendant has terminated white and African-American associates for violating the drug and alcohol policy.  (Doc. 26-10, Thomas Aff., at 9 ¶ 21). Further, Thomas and Bailey testified that they are unaware of any associates who tested positive for drugs or alcohol while on the job and were allowed to seek help from EAS, rather than being terminated.  (Doc. 26-10, Thomas Aff., at 9 ¶ 21, Doc. 26-8, Bailey Aff., at 5 ¶ 12).

On December 14, 2006, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that defendant discriminated against him due to his race. (Doc. 26-4, EEOC charge, at 45). On April 16, 2007, plaintiff received a right-to-sue notice from the EEOC. (Doc. 26-2, Plaintiff's Dep., at 329:8-10). Thereafter, he filed this action alleging that defendant terminated him based upon his race in violation of 42 U.S.C. § 1981. (Doc. 1). Defendant moved for summary judgment under Rule 56 of the FEDERAL RULES OF CIVIL PROCEDURE (doc. 24), and plaintiff filed a timely response (doc. 28). Defendant subsequently moved to strike portions of plaintiff's evidentiary submission and responsive brief as inadmissible. (Doc. 31).

## II.  MOTION TO STRIKE

Defendant moves to strike numerous portions of plaintiff's evidentiary submission and responsive brief. (Doc. 31). First, defendant contends that the testimony of McElroy and Thomas that they did not smell alcohol on plaintiff's breath should be stricken as irrelevant in view of other evidence indicating that plaintiff was under the influence of alcohol. (*Id*. at 3 ¶ 1). The court disagrees. The Federal Rules of Evidence embody a liberal standard of relevancy and the observations of McElroy and Thomas are relevant to the circumstances surrounding defendant's decision to terminate plaintiff. *See* FED. R. EVID. 401 (defining relevant evidence as "evidence having *any* tendency to make the existence of *any* fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence") (emphasis added).

Second, defendant contends that plaintiff's testimony recounting statements by Goodwin, Estes, Walker, Simmons, Singleton, Flanagan, and Bibbs that defendant allowed similarly

situated white associates to enroll in counseling in lieu of termination is due to be stricken as inadmissible hearsay and speculation. (*Id*. at 3-4). Plaintiff does not dispute that the testimony constitutes hearsay. (Doc. 32 at 3 ¶ 2, 4 ¶ 4, 8 ¶ 14). Instead, he responds that his statements are appropriate on summary judgment because the declarant's statements will be reduced to admissible form at trial. (*Id*.) For the reasons discussed below, the testimony is stricken . *See e.g., Ashley v. Southern Tool Inc.*, 201 F. Supp. 2d 1158, 1164 (N.D. Ala. 2002) (finding that plaintiff's deposition testimony recounting an alleged conversation with a former employee inadmissible hearsay).

The general rule is that inadmissible hearsay — an out-of-court statement presented for the purpose of establishing the truth of the matter asserted that does not fall within an exception to the hearsay rule — may not be considered on a motion for summary judgment. *See Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999). As an exception to this rule, district courts allow "'*otherwise admissible evidence* to be submitted in inadmissible form at the summary judgment state.'" *Id*. at 1324 (emphasis original) (quoting *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996)). To be "otherwise admissible evidence," an out-of-court statement made to a deposition deponent must admissible at trial for some purpose, *i.e.*, "the statement might be admissible because it falls within an exception to the hearsay rule, or does not constitute hearsay at all (because it is not offered to prove the truth of the matter asserted), or is used solely for impeachment purposes (and not as substantive evidence)." *Macuba*, 193 F.3d 1323-24 (footnotes omitted).

Here, plaintiff contends that this disputed evidence is otherwise admissible evidence because "the testimony of the declarants would be reducible to admissible form at trial" as

"testimony by the named witness." (Doc. 32 at 3 ¶ 2). This response is misguided because "the testimony of the declarants" is not before the court. Plaintiff failed to submit any sworn testimony from Goodwin, Estes, Walker, Simmons, Singleton, Flanagan, or Bibbs. Thus, plaintiff bears the burden of demonstrating that *his* testimony about out-of-court statements of his fellow co-workers would be admissible at trial.

Plaintiff only makes such an argument with respect to his testimony about Goodwin's statements. He contends that his testimony about Goodwin's statements are not excluded by the hearsay rule pursuant to FEDERAL RULE OF EVIDENCE 804(b)(3)[5] because Goodwin is now deceased and that her alleged statements would have subjected her to civil liability. Specifically, he contends that her statements as a counselor "would run afoul of the legal requirement that she keep such communications confidential, according to Ala. Code § 34-8A-21 (1975)." (Doc. 28 at 4 n.3, Doc. 32 at 5 ¶ 9). However, as noted by defendant, Goodwin did *not* disclose the identities of any individuals. Therefore, the alleged statements would not to subject Goodwin to civil liability or be considered statements against interest for purposes of the hearsay exception. (Doc. 30 at 6 n.7). Additionally, plaintiff's testimony about his co-worker's statements regarding defendant's treatment of other employees who reported to work under the influence of alcohol is due to be stricken as speculative because plaintiff fails to present any supporting facts and acknowledges that he was unaware of whether any of his co-workers had access to other employees' personnel files. For the foregoing reasons, plaintiff's testimony about his co-

---

[5]FEDERAL RULE OF EVIDENCE 804(b)(3) provides an exception to the hearsay rule for the admission of a statement that a "reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability."

workers' statements that defendant treated white associates more favorably is stricken.

Third, defendant contends that plaintiff's testimony that Estes and Walker told him that the breathalyser was not properly calibrated is due to be stricken as speculative and conclusory. (Doc. 31 at 4 ¶ 3). The Eleventh Circuit has "consistently held that conclusory allegations without specific supporting facts have no probative value." *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210 (11th Cir. 2000). Other than plaintiff's testimony recounting statements by Estes and Walker, he fails to present any evidence indicating that the machine was not properly calibrated. Moreover, this evidence is irrelevant to defendant's decision to terminate plaintiff because it is undisputed that defendant was unaware that Estes or Walker believed that the breathalyser was not properly calculated. Thus, plaintiff's testimony about statements made by Estes and Walker regarding the functionality of the breathalyser is stricken.

Lastly, defendant's challenges to plaintiff's evidentiary submissions and briefing regarding (1) the language of defendant's drug and alcohol policy, (2) plaintiff's testimony regarding omissions on his job application, (3) plaintiff's testimony that he had only two beers on April 22, 2005, (4) plaintiff's actions after testing positive for alcohol, and (5) plaintiff's "Chronology of Events" are denied as moot. Even considering this evidence, defendant is entitled to summary judgment on plaintiff's race-discrimination claim.

### III.  SUMMARY JUDGMENT STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007)

(per curiam ) (citation to former rule omitted); FED. R. CIV. P.56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[6] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [-now dispute-] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 259). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249; accord

---

[6]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word-genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.* "'Shall' is also restored to express the direction to grant summary judgment." *Id.* Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

*Spence v. Zimmerman*, 873 F. 2d 256 (11th Cir. 1989).  Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden" so there must be sufficient evidence on which the jury could reasonably find for the plaintiff.  *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988) (quoting *Anderson*, 477 U.S. at 254).  Nevertheless, credibility determinations, the weighing of evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor.  *Anderson*, 477 U.S. at 255.  The nonmovant need not be given the benefit of every inference but only of every reasonable inference.  *Brown v. Clewiston*, 848 F.2d 1534, 1540 n. 12 (11th Cir. 1988).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment."  *Allen*, 121 F. 3d at 643.

## IV.  ANALYSIS

Plaintiff's race-discrimination claim is flawed in several respects.  As shown below, his failure to present evidence indicating that defendant treated associates of a different race more favorably undermines his *prima facie* case.  Further, defendant articulated a legitimate, non-retaliatory reason for the termination, which plaintiff failed to rebut.

### Plaintiff Fails to State a *Prima Facie* Case of Race Discrimination

"To establish a *prima facie* case for disparate treatment in a race discrimination case, the plaintiff must show that: (1) [he] is a member of a protected class; (2) [he] was subjected to an adverse employment action; (3) the employer treated similarly situated employees outside of [his] protected class more favorably than [he] was treated; and (4) [he] was qualified to do the job."  *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (citation omitted); *see also Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1347 (11th

Cir. 2007) (§ 1981 analysis same as Title VII). "If the plaintiff satisfies these elements, then the defendant must show a legitimate, non-discriminatory reason for its employment action." *Id*. (citation omitted). "If it does so, then the plaintiff must prove that the reason provided by the defendant is a pretext for unlawful discrimination." *Id*. (citation omitted). Here, the parties dispute only whether plaintiff meets the third element – that defendant treated similarly situated employees outside of his protected class more favorably than he was treated.

In cases involving alleged racial bias in the application of discipline for violation of work rules, the plaintiff must show "'that he engaged in misconduct similar to that of a person outside the protected class, and . . . the disciplinary measures enforced against him were more severe than those enforced against the other persons who engaged in similar misconduct.'" *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1279 (11th Cir. 2008). A plaintiff is similarly situated to another employee only if "the quantity and quality of the comparator's misconduct is nearly identical." *Burke–Fowler*, 447 F.3d at 1323 (citing *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)). "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate *where no other evidence of discrimination is present*." *Wilson*, 376 F.3d at 1092 (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1992) (emphasis original)).

Here, it is undisputed that plaintiff has failed to identified any employees of any race who were not terminated after testing confirmed that they reported to work under the influence of alcohol. As recognized in *Holifield* and *Wilson*, this failure alone does not end the analysis. *See Wilson*, 376 F.3d at 1092. The issue becomes whether plaintiff presents any other evidence of discrimination by defendant.

Plaintiff relies on the following as "other evidence of discrimination": (1) that the drug

and alcohol policy does not require termination for a positive test result; (2) that Goodwin told plaintiff that other employees who violated the drug and alcohol policy were able to undergo counseling and get their job back; and (3) that other employees told plaintiff that white associates who violated the drug and alcohol policy were allowed to go to counseling in lieu of termination. (Doc. 28 at 8-9).  However, as discussed above, plaintiff's testimony of statements by other individuals of discriminatory conduct is not properly before the court, and the fact that the drug and alcohol policy does not require termination creates only the inference of the possibility of discrimination.  In fact, plaintiff has not presented any *evidence* indicating inconsistent application of the policy, and Bailey, McElroy, and Thomas testified that they are unaware of *any* associates who tested positive for alcohol or drugs while on the job and were not terminated. (Doc. 26-8, Bailey Aff., at ¶ 3, Doc. 26-9, McElroy Aff., at 2 ¶ 6, Doc. 26-10, Thomas, Aff., at 2 ¶ 5).

     Simply, plaintiff's bare assertions that defendant treated white employees more favorably are insufficient to make a *prima facie* showing.  *See Piquion v. Walgreen Co.*, 369 F. Supp. 2d 1339, 1346 (S.D. Fla. 2005) (finding that plaintiff failed to establish a *prima facie* case where he "offers nothing more than conclusory statements" and "fails to identify a similarly situated employee who was treated more favorably"); *Redding v. Norbord Georgia, Inc.*, No. 5:07-cv-451, 2010 WL 339783, *8 (M.D. Ga. Jan. 21, 2010) (finding that hearsay based on "the talk of the plant" cannot establish a similarly situated comparator).  Accordingly, summary judgment is proper.  *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1433 (11th Cir. 1998) ("[S]ummary judgment against the plaintiff is appropriate if he fails to satisfy any one of the elements in a *prima facie* case.")

14

### Plaintiff Failed to Show that Defendant's Legitimate, Nondiscriminatory Reason for Terminating Him was Pretext

Even if plaintiff can establish a *prima facie* case, summary judgment is warranted because he cannot overcome defendant's legitimate, non-retaliatory reason for terminating him, *i.e.*, that he violated its drug and alcohol policy.  When a plaintiff-employee establishes a *prima facie* case, and the defendant articulates a legitimate reason for its employment action, the burden shifts to the plaintiff to offer evidence that the reason is pretexual.  *See Wilson*, 376 F.3d at 1087.  A plaintiff may demonstrate pretext either "directly by persuading the court that a discriminatory reason more likely motivated the employee or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005).  In both instances, a plaintiff must show pretext with "concrete evidence in the form of specific facts."  *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009).  Mere "conclusory allegations and assertions" will not suffice.  *Id*.

Here, plaintiff has failed to present concrete evidence indicating that he did not violate defendant's drug and alcohol policy.  Although he challenges the accuracy of his blood-alcohol test to show pretext, he has not offered specific facts to question the results or defendant's motivations.  Instead, the results of the blood test are bolstered by plaintiff's admission that he drank two beers earlier that day and reports from a co-worker and a nurse that plaintiff smelled of alcohol and slurred his words.  Moreover, plaintiff failed to present any evidence indicating that defendant was aware of any reports that the breathalyser was not properly calibrated or had not terminated any other employees who tested positive for being under the influence of alcohol while on the job.  Significantly, "[f]ederal courts 'do not sit as a super-personnel department that

reexamines an entity's business decisions.'" *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*) (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)).  Rather, as the Eleventh Circuit has often emphasized "our inquiry is limited to whether the employer gave an honest explanation of its behavior.'" *Id*.  Plaintiff has not presented sufficient evidence for the court to question defendant's proffered reasons for terminating him or that its real reason is unlawful.  This is especially true where, as here, plaintiff failed to show that defendant treated her differently than similarly situated employees.  Therefore, his race-discrimination claim fails.

## V.   CONCLUSION

Having determined that there are no genuine issues of disputed fact for trial, the court hereby finds that summary judgment in favor of defendant on all counts is due to be granted and this case is due to be dismissed with prejudice.  The defendant's motion to strike is also due to be granted in part and denied in part.  An appropriate order will be entered.

**DONE**, this 31st day of August, 2011.

_____
**JOHN E. OTT**
United States Magistrate Judge